# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| T. ROWE PRICE GROUP, INC., *et al.*, | : | CIVIL ACTION |
| *Plaintiffs,* | : | |
| | : | NO. 26-0015 |
| v. | : | |
| | : | |
| MICHAEL R. NEEDLE, *et al.*, | : | |
| | : | |
| *Defendants.* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                    JANUARY 9, 2026

# MEMORANDUM OPINION

## INTRODUCTION[1]

Defendants, Michael R. Needle and William A. Needle, (collectively, the "Needle Brothers") are sons to Rhea Needle, who died in September 2018. At the time of her death, Rhea Needle held two accounts associated with Plaintiffs T. Rowe Price Group, Inc., T. Rowe Price Associates, Inc., and T. Rowe Price Investment Services, Inc. (collectively "Plaintiffs" or "T. Rowe Price"); *to wit*: an individual retirement account ("IRA") and a brokerage account. Related to these account, in 2001, Rhea Needle executed a power of attorney authorizing her son-in-law, Edward Dosik ("Dosik"), to open and manage these accounts on her behalf. Dosik opened the IRA and brokerage account in 2002. Rhea Needle's three children — the Needle Brothers, and Susan Needle Dosik, Dosik's wife, — were named the beneficiaries of the IRA account in the event of Rhea Needle's death.

---

[1]  This Court relies on facts from a prior case that it dismissed concerning the same parties, accounts, and claims. *See Needle v. T. Rowe Price Grp. Inc.*, Civil Action No. 21-cv-4786, 2022 WL 3357450 (E.D. Pa. Aug. 15, 2022). Courts may take judicial notice of "court-filed documents." *Sturgeon, v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 257 (E.D. Pa. 2020).

In October 2021, the Needle Brothers brought a civil action in this Court (the "2021 Action"), while also pursuing several requests for arbitration before the Financial Industry Regulattory Authority ("FINRA"), claiming, *inter alia*, that Dosik mismanaged the IRA account and deprived the Needle Brothers of the gains the IRA could have yieled had the funds therein been more prudently invested and not misappropriated.  (*See* ECF 1 at pp. 70-91) (copy of the Needle Brothers' Fourth Revised Statement of Claim – FINRA-DR Arbitration #2022-00367).  In the 2021 Action, this Court enjoined the Needle Brothers from prosecuting a FINRA arbitration action because they were beneficiaries and not "customers" to the accounts at issue.  *See Needle v. T. Rowe Price Grp. Inc.,* Civil Action No. 21-4786, 2022 WL 900398, at *3 (E.D. Pa. Mar. 28, 2022).  The Court, upon further consideration, again found the Needle Brothers, as beneficiaries, could not compel arbitration, and dismissed the Needle Brothers civil action.  *See Needle,* Civil Action No.. 21-4786, 2022 WL 3592206 (E.D. Pa. Aug. 19, 2022).  The Needle Brothers appealed this Court's dismissal of their claims and on May 26, 2023, the United States Court of Appeals for the Third Circuit ("Third Circuit"), without issuing an opinion, summarily dismissed the appeal by Order.  *See Needle v. T. Rowe Price Group Inc.*, No. 22-2748 (3d Cir. May 26, 2023).

Presently, before the Court is T. Rowe Price's motion for a temporary restraining order and preliminary injuction, (ECF 5), which seeks to enjoin the Needle Brothers from prosecuting a FINRA arbitration against them based on the investment accounts associated with Rhea Needle that were the subject of the 2021 Action.  For the reasons set forth herein, T. Rowe Price's motion, (ECF 5), is granted, *in part*.

**BACKGROUND**

As previously noted, this is not the first time the Needle Brothers have attempted to force T. Rowe Price to arbitrate before FINRA over the management and disbursement of their mother, Rhea Needle's, investment accounts. To address this motion, a brief recitation of facts, gleaned from the above cited case and the current filings is helpful:

>  On December 26, 2001, Rhea Needle executed a general power of attorney (the "Power of Attorney") authorizing her son-in-law, Dosik to open investment accounts and to buy, sell, and trade securities on her behalf. Pursuant to the Power of Attorney, Dosik opened two accounts with T. Rowe Price — an Individual Retirement Account (the "IRA") and a brokerage account ("Brokerage Account") — in Rhea Needle's name. The Needle Brothers, along with their sister, Susan Needle Dosik, were named as beneficiaries of the IRA in the event of Rhea Needle's death.

> Dosik managed the two investment accounts during Rhea Needle's life. Upon Rhea Needle's death on September 18, 2018, the ownership of a proportional share of the securities held in the IRA transferred to each of the named beneficiaries, including the Needle Brothers and their sister. The securities were sold and the named beneficiaries received the sale proceeds in early March 2019.

> On September 21, 2021, the Needle Brothers petitioned the Philadelphia Orphans' Court to appoint them as temporary fiduciaries of the Estate of Rhea Needle in order to bring claims against Dosik and T. Rowe Price on behalf of Rhea Needle's Estate. By Decree dated October 20, 2021, the Orphans' Court denied the Needle Brothers' petition to be appointed as temporary fiduciaries, citing a lack of authority. The Needle Brothers appealed that decision to the Superior Court of Pennsylvania. The Superior Court quashed their appeal on December 5, 2022. *Est. of Needle*, 290 A.3d 655 (Pa. Super. Ct. 2022).

> On October 30, 2021, the Needle Brothers commenced an initial action in this court relating to the management of Rhea Needle's accounts with T. Rowe Price. *Needle v. T. Rowe Price Grp. Inc.*, Civil Action No., 21-cv-4786. On December 17, 2021, the Needle Brothers moved to stay the litigation pending arbitration before FINRA, *id.*, (ECF 11), which T. Rowe Price opposed, *id.*, (ECF 21). On March 28, 2022, this Court issued a memorandum opinion and order, *id.* (ECF 62, 63), and granted T. Rowe Price's motion to enjoin the Needle Brothers from forcing arbitration before FINRA as to Rhea Needles' IRA and Brokerage accounts, finding that, *inter alia*, the Needle Brothers were "beneficiaries" to Rhea Needle's accounts and not "customers" as defined in those accounts and, thus, no

source of law or FINRA rule allowed the Needle Brothers to compel arbitration before FINRA. *See Needle*, 2022 WL 900398, at *3.[2]

Relevant to the underlying action, on October 30, 2025, the Needle Brothers filed a Fourth Revised Statement of Claim with FINRA, again seeking arbitration before that body related to Rhea Needle's accounts with T. Rowe Price, which were the subject of the 2021 Action. (ECF 1 at ¶ 24) (*see also* ECF 1 at Ex. D, pp. 70-91) (copy of Fourth Revised Statement of Claim). On January 1, 2025, T. Rowe Price filed the underlying complaint against the Needle Brothers, as well as a motion for a temporary restraining order ("TRO") and for preliminary injuction seeking declaratory and injunctive relief to enjoin the Needle Brothers from prosecuting the FINRA arbitration. (ECF 1, 5).

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 65 governs the issuance of injunctions and restraining orders. Fed. R. Civ. P. 65. Injunctive relief is extraordinary in nature and available only in limited circumstances. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.") (citation modified). The standard for obtaining a temporary restraining order is the same standard for obtaining a preliminary injunction. *Corporate Synergies Group, LLC v. Andrews*, 775 F. App'x 54, 58 n.5 (3d Cir. 2019) (citing *PennMont Sec. v. Frucher*, 586 F.3d 242, 245 (3d Cir. 2009)) ("The factors are the same for both temporary restraining orders and preliminary injunctions[.]").

Thus, as to a temporary restraining order or preliminiary injunction, a court deciding a request for injunctive relief must consider four factors: (1) whether the movant has shown a probability of success on the merits; (2) whether the movant will be irreparably injured if relief is denied; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief is in the public interest.

---

[2] The Court hereby incorporates by reference its analysis and reasoning in *Needle,* Civil Action No. 21-4786, , 2022 WL 900398 and *Needle*, Civil Action No. 21-4786, 2022 WL 3592206.

*Crissman v. Dover Downs Ent. Inc.*, 239 F.3d 357, 364 (3d Cir. 2001).  In *Reilly v. City of Harrisburg*, the Third Circuit clarified the burden on a movant when seeking preliminary injunctive relief and held that the movant must first demonstrate a significantly better than negligible chance of prevailing on the merits and that "it is more likely than not" that the movant will suffer irreparable harm in the absence of a preliminary injunction.  858 F.3d 173, 179 (3d Cir. 2017)..  If a movant meets these two threshold requirements, the district court then "considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance o in favor of granting the requested preliminary relief." *Id.*

**DISCUSSION**

As noted, these parties and the issues presented in this action have been previously addressed by this Court.  Despite this Court's previous rulings that the Needle Brothers cannot compel T. Rowe Price to arbitrate before the FINRA over the alleged mismanagment of their mother's investment accounts with T. Rowe Price, it appears that the Needle Brothers have chosen to disregard those rulings, forcing Plaintiff to file the instant complaint requesting:  (1) a declaratory judgment that the Needle Brothers lack standing to invoke FINRA arbitration against T. Rowe Price over Rhea Needle's accounts; (2) a declaratory judgment that the Needle Brothers claims against T. Rowe Price are barred by *res judicata*; (3) a declaratory judgment that the Needle Brothers' claims against T. Rowe Price, even if otherwise valid, are time-barred; and (4) a request for injunctive relief in the way of a preliminary injunction until the Court renders a decision on Counts 1 and 4.  (ECF 1); *see also* ECF 5 at p. 1).

In their motion for temporary restraining order and preliminary injunction, T. Rowe Price seeks to enjoin the Needle Brothers from pursuing a FINRA arbitration against T. Rowe Price until this Court rules on whether they have standing to do so.  (ECF 5 at 1).  For the

reasons set forth, this Court finds T. Rowe Price has met the standard for injunctive relief and grants its motion for a temporary restraining order.

### *Likelihood of Success on the Merits*

T. Rowe Price argues that the Needle Brothers' October 30, 2025 filing of the Fourth Revised Statement of Claim to commence a FINRA arbitration against T. Rowe Price "is in direct violation of this Court's August 19, 2022 decision." (ECF 5 at p. 13). Specifically, T. Rowe Price argues that the August 19, 2022 decision held that the Needle Brothers "have no right to invoke FINRA arbitration against T. Rowe Price based on alleged conduct relating to Rhea Needle's T. Rowe Price accounts," and, by again attempting to force a FINRA arbitration over those accounts, the Needle Brothers are "[i]gnoring this Court's decision" by "reasserting the same arguments in support of a supposed right to FINRA arbitration that this Court expressly rejected . . . ." (ECF 5 at p. 13). This Court agrees.

Unequivocally, this Court has held that the Needle Brothers cannot force T. Rowe Price into FINRA arbitration over the at issue accounts. Notably, this Court determined that under FINRA Rule 12200, a party may enforce arbitration (1) if the claimant is a "customer," (2) who is bringing a claim pursuant to a pertitnent contract, as the signor, assignee, or third-party beneficiaries of the contract, and (3) *only* where the dispute arises "in connection with the business activities of the member." *Needle*, 2022 WL 3592206, at *4. The Needle Brothers cannot force an arbitration with T. Rowe Price pursuant to the plain language of FINRA's rule:

> Importantly, the third component of Rule 12200 requires arbitration only where the dispute arises "in connection with the business activities of the member." Courts have interpreted this third requirement of Rule 12200 as only requiring arbitration of disputes "arising from the account" of the customer. *See, e.g., Citigroup Glob. Mkts. Inc. v. Abbar*, 761 F.3d 268, 275 (2d Cir. 2014). Regardless of whether [the Needle Brothers] would be considered customers for another purpose, the dispute [the Needle Brothers] presently seek to arbitrate against T. Rowe Price does not concern their own personal or beneficiary accounts. Rather,

6

> [the Needle Brothers] seek to compel the arbitration of disputes that allegedly arose from the management of their mother's IRA. As T. Rowe Price argues, allowing a perceived customer to invoke Rule 12200 to arbitrate disputes arising from any customer's account would have "no apparent limiting principle." (T. Rowe Price's Br., ECF 32, at p. 18). This Court agrees and, accordingly, finds that [the Needle Brothers] cannot invoke Rule 12200 to compel T. Rowe Price to arbitrate [the Needle Brothers'] specific claims.

*Needle*, 2022 WL 3592206, at *4. Similarly, this Court held that the Needle Brothers could not compel arbitration based on an Arbitration Clause in Rhea Needle's IRA New Account Form:

> The Arbitration Clause provides, in relevant part, that the account holder—Rhea Needle—"agrees to settle by arbitration any controversy between [herself] and [T. Rowe] Price." (New Account Form, ECF 32, at p. 67). It is undisputed that [the Needle Brothers] are not the parties to the underlying contract between T. Rowe Price and Rhea Needle that contains the Arbitration Clause.
>
> Nonetheless, under certain circumstances, nonparties to an agreement to arbitrate may bind a signatory party "when traditional principles of state law allow a contract to be enforced by or against nonparties[.]" *Kipp v. Weyerhauser Co.*, 354 F. Supp. 3d 622, 626 (E.D. Pa. 2018) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)) (other citations, quotation marks, and alterations omitted). Such traditional principles may include, *inter alia*, third-party beneficiary and assignment. [The Needle Brothers] contend that they are the "intended beneficiaries" of T. Rowe Price's agreement with Rhea Needle and, therefore, they can bind T. Rowe Price to arbitrate their claims. In general, a party cannot be required to submit to the arbitration of a dispute that the party has not agreed to arbitrate. *See Dougherty v. VFG, LLC*, 118 F. Supp. 3d 699, 711 (E.D. Pa. 2015) (citing *A T & T Tech. v. Commc'n Workers of Am.*, 475 U.S. 643, 648 (1986)). "[C]ourts have been willing to apply third party beneficiary law in examining the contractual standing of a non-signatory party to a dispute, provided there is an expression of the requisite intent between the third party and the plaintiff to arbitrate their claims." *In re Prudential Ins. Co. of Am. Sales Prac. Litig. All Agent Actions*, 133 F.3d 225, 229 (3d Cir. 1998) (citations omitted). Here, there is no such expression of the requisite intent between [the Needle Brothers] and T. Rowe Price. To the contrary, the Arbitration Clause [the Needle Brothers] rely on only provides that Rhea Needle agreed to arbitrate "any controversy between [herself] and [T. Rowe] Price." (New Account Form, ECF 32, at p. 67) (emphasis added). The Arbitration Clause provides no expression of intent to arbitrate that could extend to claims between [the Needle Brothers] and T. Rowe Price. Absent any such expression of intent to arbitrate, [the Needle Brothers'] reliance on the Arbitration Clause is unfounded.
>
> [The Needle Brothers] also argue that they can invoke the Arbitration Clause as the assignees of Rhea Needle's rights under her contract with T. Rowe

7

> Price. Specifically, [the Needle Brothers] contend that upon Rhea Needle's death, her rights under the New Account Form passed to her named beneficiaries of the IRA—[the Needle Brothers] and their sister—pursuant to the Uniform Transfer on Death Security Registration Act ("UTDSRA"), an Act adopted in Pennsylvania. 20 Pa. Cons. Stat. §§ 6401–13. [The Needle Brothers] are again mistaken.
>
> In its relevant part, the UTDSRA provides: "On death of a sole owner or the last to die of all multiple owners, ownership of securities registered in beneficiary form passes to the beneficiary or beneficiaries who survive all owners." 20 Pa. Cons. Stat. § 6407. It is clear from the plain language of the UTDSRA that the statute concerns the transfer of the actual securities from an original owner to a named beneficiary upon the owner's death, not the transfer of rights under the underlying contract. *See id.* § 6407 ("On death of a sole owner ..., **ownership of securities** registered in beneficiary form passes to the beneficiary or beneficiaries who survive all owners.") (emphasis added). As such, under the UTDSRA, upon Rhea Needle's death, [the Needle Brothers], as two of the named beneficiaries, became the owners of their apportioned securities held in the IRA; they did not become owners of, or the "assignees" to, any contractual rights and obligations associated with the IRA.

*Id.* at *4-5. Thus, this Court again concludes that "[b]ecause [the Needle Brothers] cannot invoke FINRA Rule 12200 or any written arbitration agreement to compel arbitration of their dispute against T. Rowe Price, their claims are not arbitrable. Thus, [the Needle Brothers'] claim against T. Rowe Price under the Federal Arbitration Act at Count I is dismissed." *Id.* at *5.

Accordingly, the Court finds that T. Rowe Price is likely to succeed on the merits of their claim to declaratory relief that the Needle Brothers cannot compel T. Rowe Price to participate in a FINRA arbitration related to the IRA.

### *Irreparable Harm*

In this judicial circuit, irreparable harm is that which "cannot be redressed by a legal or an equitable remedy following a trial." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994). Economic loss does not constitute irreparable harm. *Id.* Moreover, injunctive relief is limited to circumstances in which the injury alleged is not only irreparable, but actual and

8

imminent. *Holiday Inns of Am., Inc. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969) (noting that injunctive relief may not be used to simply "eliminate a possibility of remote future injury, or a future invasion of rights . . ."). Here, T. Rowe Price has met its burden to show that the harm it would incur if forced to arbitrate before FINRA would be irreparable. (*See* ECF 5 at pp. 14-15). As this Court previously held, "'forcing a party to arbitrate a claim it did not agr5tee to arbitrate constitutes *per se* irreparable harm.'" *Needle*, 2022 WL 900398, at *4 (quoting *AT & T Mobility LLC v. Smith*, 2011 WL 5924460, at *9 (E.D. Pa. Oct. 7, 2011)); *see also PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 514–15 (3d Cir. 1990), *overruled on other grounds by Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002) (holding that "the district court did not abuse its discretion or commit an error of law in determining that [the plaintiff] would suffer irreparable harm if it were forced to submit to the arbitrator's jurisdiction . . . ."). Accordingly, this factor strongly weighs in favor of granting the injunctive relief T. Rowe Price seeks – *i.e.*, to enjoin the Needle Brothers from forcing T. Rowe Price to participate in a FINRA arbitration.

## *Balance of the Hardships*

T. Rowe Price does not make a direct argument on this factor. (*See generally* ECF 5). Nonetheless, this Court will address this factor. An injunction halting the FINRA arbitration will not harm the Needle Brothers nearly as much as it would harm T. Rowe Price, who, absent the requested injunctive relief, would be required to participate in a FINRA arbitration. A TRO to prevent the Needle Brothers from proceeding with an arbitration may, at most, delay the resolution of any further securities fraud claims. T. Rowe Price has brought its suit to ask this Court to again address/rule on the arbitability of the Needle Brothers' claims. Absent a showing from the Needle Brothers that this Court's prior rulings were in error, or that facts have changed,

9

this Court finds no reason to alter its analysis that the balance of hardships favors granting the injunctive relief sought by T. Rowe Price. This Cour finds that T. Rowe Price would be prejudiced if forced to continue defending against the Needle Brothers' claims in arbitration, especially given that this Court has already found the Needle Brothers cannot force a FINRA arbitration related to the the investments accounts. Thus, the potential harm T. Rowe Price could suffer if this Court did not issue an injunction outweighs any potential delay that the Needle Brothers might experience. The balance of the parties' hardships weighs in favor of granting the requested relief. *See Needle*, 2022 WL 900398, at *4 (finding the same).

### *Public Interest*

Where the movant "'demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor'" the movant. *Needle*, 2022 WL 900398, at *5 (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)). Further, "[w]hen the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis[.]" *Macquarie Holdings USA Inc. v. Rode*, 2012 WL 12882417, at *4 (C.D. Cal. Jan. 17, 2012) (citing *Stormans, Inc. v. Selecky*, 586 F.3d 1108, 1138–39 (9th Cir. 2009)). Here, T. Rowe Price has demonstrated a strong likelihood of success on the merits and that it would be irreparably harmed if forced to participate in a FINRA arbitration.

An injunction issued here would be narrow and limited only to T. Rowe Price and the Needle Brothers. As such, this Court finds that the public interest favors granting the motion for injunctive relief.

**CONCLUSION**

Based on the reasons set forth, this Court grants T. Rowe Price's motion, (ECF 5), *in part*. Consistent with Rule 65(b), a temporary restraining order is hereby entered and the Needle Brothers may not take any action within the time prescribed by the Rule to enforce or prosecute its FINRA arbitration action against T. Rowe Price.

**BY THE COURT:**

/s/ *Nitza I. Quiñones Alejandro*
**NITZA I. QUIÑONES ALEJANDRO, J.**
*Judge, United States District Court*