**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **T. ROWE PRICE GROUP, INC.,** *et al.*, | : | **CIVIL ACTION** |
| *Plaintiffs,* | : | |
| | : | **NO. 26-0015** |
| **v.** | : | |
| | : | |
| **MICHAEL R. NEEDLE,** *et al.*, | : | |
| *Defendants.* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                      March 16, 2026

**MEMORANDUM OPINION**

**INTRODUCTION**

On January 5, 2026, Plaintiffs T. Rowe Price Group, Inc., T. Rowe Price Associates, Inc., and T. Rowe Price Investment Services, Inc., (collectively "Plaintiffs"), filed a civil action complaint for declaratory and injunctive relief against Defendants Michael R. Needle and William A. Needle, (collectively, "Defendants" or the "Needle Brothers"), who are attempting again to initiate an arbitration hearing before the Financial Industry Regulatory Authority, (the "FINRA"), against Plaintiffs related to accounts held by their late mother, Rhea Needle, (the "Decedent").[1] (ECF 1).  Plaintiffs also filed a motion for temporary restraining order and preliminary injunction. (ECF 5).  By Order and Memorandum Opinion, the motion for temporary restraining order was granted.  (*See* ECF 12, 13).  On February 2, 2026, Plaintiffs amended their complaint seeking the same relief — *i.e.*, a declaration that Defendants cannot prosecute their challenge based on their late mother's accounts with Plaintiffs before the FINRA.  (ECF 26).

---

[1]      This Court relies, *in part*, on facts from a prior case d concerning the same parties, accounts, and claims that has been dismissed.  *See Needle v. T. Rowe Price Grp. Inc.*, Civil Action No. 21-cv-4786, 2022 WL 3357450 (E.D. Pa. Aug. 15, 2022).  Courts may take judicial notice of "court-filed documents." *Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 257 (E.D. Pa. 2020).

On February 5, 2026, a hearing was held pursuant to Federal Rule of Civil Procedure, ("Rule"), 65(b)(3), (ECF 29, 33), to determine whether a preliminary injunction was warranted. Both parties, represented by counsel, participated in the February 5, 2026 hearing.  (*See* ECF 33). The issue before this Court is whether Defendants, the sons of the Decedent, who died in September 2018, can challenge before the FINRA the alleged mismanagement of Decedent's investment accounts with Plaintiffs *on behalf of their mother's estate*.  For the reasons set forth, this Court finds that Defendants do not have the proper legal authority to arbitrate on behalf of the Decedent's Estate before the FINRA and, therefore, grants Plaintiffs' preliminary injunction request to prevent them from proceeding with a FINRA arbitration.

**BACKGROUND**

The following facts, relevant to the current motion, are gleaned from the 2021 Action and the instant civil action filings: on September 18, 2018, Rhea Needles (the "Decedent") held two accounts associated with Plaintiffs; *to wit*: an individual retirement account, ("IRA"), and a brokerage account, (collectively, the "Subject Accounts").  In 2001, Decedent executed a power of attorney authorizing her son-in-law, Edward Dosik, ("Dosik"), a certified public accountant, by way of a General Power of Attorney and Full Trading Authorization with Privileges to withdraw Money and/or Securities, to manage the Subject Accounts, which Dosik did from 2002 until the securities were sold and the named beneficiaries received the sale proceeds.  The Decedent's three children — Defendants, and Susan Needle Dosik, (Dosik's wife) — were the named beneficiaries of the IRA account.

The following is a summary of the facts provided by Defendants Needle in Orphans Court:

Following Rhea Needle' death, Decedent's Will dated November 20, 1998, and which named Dosik as executor was probated. (*Id* ) On October 9, 2018, the Register of Wills issued Dosik Letter of Testimentary as the named Executor of Decedent's Estate, (the "Estate"). (ECF 32-2, at p. 2) (*see also* Philadelphia Court of Common Pleas Orphans' Court Division September 12, 2024 adjudicatory decree).

In 2019, the Needle Brothers filed in Orphans Court a petition to compel accounting. Dosik filed his First and Final Account for the period of December 26, 2001 to September 18, 2018. The Needle Brothers on November 2, 2019, filed objections to the accounting. The Court held a one day hearing on November 3, 2021 on the objections and issued a decree on November 8, 2021. The Needle Brothers appealed the decree to the Superior Court of Pennsylvania, which quashed all the objections except one, (not relevant to this action). *Id.* Upon remand, in the Adjudicatory Decree dated September 12, 2024, the Orphans Court addressed the surviving objection (regarding unpaid fees to the accountant, attorneys' fees and costs), noted "the Court clarified the percentage distribution allocated to the Needle brothers and carved out authority for the Needle brothers to proceed with the litigation against T. Rowe Proce with the Estate of Rhea S. Needle as plaintiff."

In the interim, on September 21, 2021, the Needle Brothers petitioned the Orphans' Court to appoint them temporary fiduciaries of Decedent's Estate to allow them to bring claims against Dosik and Plaintiffs on behalf of the Decedent's Estate.[2] By Decree dated October 20, 2021, the Orphans' Court denied that petition.[3] The Needle Brothers appealed the decision to the Superior Court of Pennsylvania, which quashed the appeal on December 5, 2022. *Est. of Needle*, 290 A.3d 655 (Pa. Super. Ct. 2022).

On February 4, 2026, The Orphans Court entered an Amended Decree *nunc pro tunc* amending the Adjudicatory Decree of September 14, 2024, to grant Defendants "the authority to prosecute claims against T. Rowe Proce with the Estate of Rhea S. Needle as plaintiff and to prosecute FINRA DR Arbitration 2022-00367 on behalf of the Estate of Rhea Needle and to prosecute or defend any related proceeding on behalf of the Estate of Rhea Needle". (*See* ECF 32-3). As such, the Needle Brothers were appointed *administrators as litem* to prosecute the FINRA arbitration.

The following is the procedural history that occurred in federal court.

In October 2021, the Needle Brothers brought a civil action in federal court, (the "2021 Action"), while also pursuing an arbitration before the FINRA. In the civil action, the Needle Brothers claimed, *inter alia*, that Dosik and Plaintiffs mismanaged the IRA account and deprived them of the gains the IRA could have

---

[2] *Needle*, 2022 WL 3357450, at *2.

[3] *Id.*

yielded had the funds been appropriately managed. *See Needle v. T. Rowe Price Grp. Inc.*, Civil Action No. 21-cv-4786, 2022 WL 900398, (ECF 1) (E.D. Pa. Oct. 30, 2021). On March 28, 2022, this Court issued a Memorandum Opinion and Order and granted T. Rowe Price's motion to enjoin the Needle Brothers from pursuing an arbitration before FINRA on the Subject Accounts. *Needle,* Civil Action No. 21-cv-4786, 2022 WL 900398 (E.D. Pa. Mar. 28, 2022), finding, *inter alia*, that the Needle Brothers were "beneficiaries" of those accounts and not "customers" associated with those accounts and, thus, no source of law or FINRA rule allowed the Needle Brothers to compel arbitration before FINRA. *Id.* at \*3. By Order dated August 19, 2022, the Needle Brothers' civil action was dismissed, *See Needle,* Civil Action No. 21-cv-4786, 2022 WL 3592206 (E.D. Pa. Aug. 19, 2022). The dismissal was affirmed by the United States Court of Appeals for the Third Circuit, ("Third Circuit"). *Needle v. T. Rowe Price Grp. Inc.*, No. 22-2748, D.E. 30 (3d Cir. May 26, 2023).

Relevant to the underlying action, on October 30, 2025, the Needle Brothers filed a Fourth Revised Statement of Claim with the FINRA, again seeking to arbitrate before that body issues regarding the Subject Accounts. (ECF 1 at ¶ 24) (*see also* ECF 1 at Ex. D, pp. 70-91) (copy of Fourth Revised Statement of Claim). On January 1, 2025, T. Rowe Price filed the underlying action against the Needle Brothers, and a motion for a temporary restraining order and for preliminary injunction seeking declaratory and injunctive relief to enjoin the Needle Brothers from prosecuting an arbitration before the FINRA. (ECF 1, 5).

This Court granted temporary injunctive relief, (ECF 12, 13, 25, 35), and held a hearing on February 5, 2026 to determine whether further relief was warranted, (*see* ECF 33). At the conclusion of the hearing, this Court requested supplemental briefing from the parties addressing the Needle Brothers' alleged legal status/authority to represent the Decedent's Estate and their alleged right to pursue claims on behalf of the Decedent's Estate related to the Subject Accounts. (ECF 28). That supplemental briefing was completed as of February 13, 2026. (ECF 31, 32).

The facts, procedural histories and all related filings have been considered and reviewed and the issues presented in preliminary injunction motion are ripe for resolution.

**LEGAL STANDARD**

Federal Rule of Civil Procedure, ("Rule"), 65 governs the issuance of injunctions and restraining orders. Fed. R. Civ. P. 65. Injunctive relief is extraordinary in nature and available only in limited circumstances. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary

injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.") (citation modified).  The standard for obtaining a temporary restraining order is the same standard for obtaining a preliminary injunction. *Corporate Synergies Grp., LLC v. Andrews*, 775 F. App'x 54, 58 n.5 (3d Cir. 2019) (citing *PennMont Sec. v. Frucher*, 586 F.3d 242, 245 (3d Cir. 2009)) ("The factors are the same for both temporary restraining orders and preliminary injunctions[.]").

Thus, as to a temporary restraining order or preliminary injunction, a court deciding a request for injunctive relief must consider four factors, *to wit*: (1) "a likelihood of success on the merits, (2) a likelihood that the moving party will suffer irreparable harm, (3) that the balance of equities weighs in the moving party's favor, and (4) that injunctive relief is in the public interest." *Osorio-Martinez v. Att'y Gen. United States of Am.*, 893 F.3d 153, 178 (3d Cir. 2018) (citation modified).  In *Reilly v. City of Harrisburg*, the Third Circuit clarified the burden on a movant when seeking preliminary injunctive relief and held that the movant must first demonstrate a significantly better than negligible chance of prevailing on the merits and that "it is more likely than not" that the movant will suffer irreparable harm in the absence of a preliminary injunction.  858 F.3d 173, 179 (3d Cir. 2017).  If a movant meets these two threshold requirements, the district court then "considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.*

**DISCUSSION**

As noted, on January 5, 2026, Plaintiffs brought this declaratory judgment action and a motion for temporary restraining order and preliminary injunction against Defendants.  In their response, Defendants contend that they were appointed as administrators *ad litem* of the

5

Decedent's Estate and are authorized to bring an arbitration action before the FINRA.  Defendants further contend that the Orphans' Court issued their appointment as administrators *ad litem*.

Under Pennsylvania law, the Register of Wills determines and issues letters to persons or entities who may execute (*e.g.*, bring claims, settle, etc.) on behalf of a decedent's estate.  *See* 20 Pa. C.S. § 901 ("Within the county for which he has been elected or appointed, the Register shall have jurisdiction of the probate of wills, the grant of letters to a personal representative, and any other matter as provided by law.").  The Orphans' Court, a Division of the Philadelphia Court of Common Pleas, has jurisdiction to oversee and administer that process.  20 Pa. Cons. Stat. § 711(1) (granting to the Orphans' Court division jurisdiction over "[t]he administration and distribution of the real and personal property of decedents' estates . . . ").  In short, these entities have distinct official and statutory functions; the Register of Wills *appoints* the administrator/administratrix or executor/executrix; the Orphans' Court *oversees administration* of an estate.  *See Estate of Wisniewski v. Sawicki*, 283 A.3d 811 (Pa. Super. Ct. 2022) (explaining that "[t]he Register, not the Orphans' court" has original jurisdiction in appointing administrators).

Here, Defendant Michael Needle is an attorney representing himself and his brother in this and the other related matters.  Defendant Michael Needle argued that he obtained from the Orphans' Court the purported designation as administrator *ad litem* and authorization to execute claims against Plaintiffs on behalf of Decedent's Estate.  However, the Adjudicatory Decree issued by the Orphans' Court is not effective in allowing Defendants to pursue claims on behalf of Decedent's Estate.  In an attempt to rectify this issue, Defendant Michael Needle obtained from the Orphans' Court an Amended Decree issued on February 4, 2026.  (ECF 32-3).  In the Amended Decree, the Orphans' Court held that, in "execution of a Settlement Agreement reached between Accountant/Executor Edward Dosik and [the Needle Brothers]," the Needle Brothers "have the

6

authority to litigate claims against T. Rowe Price with the Estate of [the Decedent] as plaintiff and to prosecute FINRA DR Arbitration 2022-00367 on behalf of the Estate of [the Decedent] and to prosecute or defend any related proceeding . . . ." (*Id.*).  The Amended Decree appears to amend the Adjudicatory Decree issued September 12, 2024, *nunc pro tunc* "to provide that [the Needle Brothers] were appointed and remain *administrators ad litem* to prosecute FINRA DR 2022-00367 on behalf of the estate of [the Decedent] . . . ." (*Id.*).  In sum, the Amended Decree, on its face, appoints the Needle Brothers as administrators *ad litem* of the Estate for the sole purpose of pursuing the FINRA arbitration related to the Subject Accounts first filed in 2022, (*i.e.* FINRA DR Arbitration 2022-00367).  By virtue of the Amended Decree issued *nunc pro tunc*, it appears to imply that the Needle Brothers held this legal status as of the initial Adjudicatory Decree dated September 12, 2024.[4]

Plaintiffs challenge the legitimacy of such authorization.  This Court finds, like the Superior Court has, that the appointment of an administrator *ad litem* as well as this grant of authority by the Orphans' Court has no legal effect because the Orphans' Court, though it has authority to administer executory proceedings, does not possess the authority to appoint executors or administrators.  *See  Estate of Wisniewski v. Sawicki*, 283 A.3d 811 (Pa. Super. Ct. 2022); *In re Estate of Huber*, 197 A.3d 288 (Pa. Super. Ct. 2018); *see also* 20 Pa. Cons. Stat. § 711(1) (granting

---

[4]      *Nunc pro tunc* means, generally, giving retroactive legal effect, *e.g.*, by considering an untimely filed response or challenge timely. *Nunc pro tunc*, *Black's Law Dictionary* (12th ed. 2024).  This Court is unaware of, and no party has cited to, any context such as this where a party was granted retroactive authority to bring a claim on behalf of a decedent's estate.  A plain reading of the Amended Decree shows that the apparent intended effect of the Amended Decree is to amend the initial Adjudicatory Decree, issued September 12, 2024, to, *inter alia*, appoint, as of the date of the Adjudicatory Decree, the Needle Brothers as administrators *ad litem* on behalf of Decedent's estate for the limited purpose of pursuing a FINRA arbitration related to the Subject Accounts.  (*See* ECF 32-2, 32-3).  There is no textual or other support in either the Adjudicatory Decree or the Amended Decree that the Needle Brothers' legal status to do so predates the date of the Adjudicatory Decree.  Accordingly, as the Amended Decree was issued *nunc pro tunc*, this Court considers the date of the Adjudicatory Decree, September 12, 2024, to be the date upon which the Needle Brothers obtained this aforementioned limited *ad litem* legal status.

the Orphans' Court its jurisdiction to oversee "the administration and distribution of the real and personal property of decedent's estates and the control of the decedent's burial").

Based on Pennsylvania's statutory framework, the factual background, the parties' pre- and post- hearing filings (*see* ECF 1, 5, 15, 21, 22, 31, 32), as well as the arguments and representations made at the February 5, 2026 hearing, (*see* ECF 33), this Court finds that the Orphan's Court Amended Decree of February 4, 2026, which purports to grant Defendants authority to prosecute a FINRA arbitration, is not legally enforceable.  Consequently, Plaintiffs' challenge to the enforcement of the purported authority is valid and sustained.  That is, this Court finds that Defendants' designation as administrators *as litem* obtained from the Orphans' Court is not legally binding.

In light of this conclusion, this Court will now address the relevant factors to determine whether to grant Plaintiffs' request for a preliminary injunction.

### *Likelihood of Success on the Merits*

T. Rowe Price acknowledges that the plain language and text of the Amended Decree appoints Defendants as administrators *ad litem* of Decedent's Estate "to litigate claims against T. Rowe Price with [Decedent's Estate] as plaintiff in FINRA's arbitration forum." (ECF 31 at p. 1). As noted, Plaintiffs successfully argued that the Orphans' Court did not have the authority to designate Defendants as administrators *ad litem* of Decedent's Estate for the purpose of prosecuting such claims in the FINRA forum. (*Id.* at pp. 1-10).  That power rests only with the Register of Wills. (*See, e.g.*, ECF 31 at p. 3-4).  In particular, Plaintiffs cite to 20 Pa. Cons. Stat. § 3155, (*Id.* at pp. 4-5), and several Pennsylvania cases interpreting the statute.  Specifically, Title 20, Section 3155 of the Pennsylvania Consolidated Statutes provides that "letters of administration shall be granted *by the register*, in such form as the case shall require, to one or more of those

hereinafter mentioned . . . ." 20 Pa. Cons. Stat. § 3155(b) (emphasis added). The Superior Court of Pennsylvania has held that:

> [p]ursuant to the Decedents, Estates and Fiduciaries Code, jurisdiction over decedents' estates and their fiduciaries is vested in the Orphans' Court division. *See* 20 [Pa. Cons. State.] § 711. However, jurisdiction to grant letters to a personal representative is vested in the Register of Wills. *Id.* § 901 (providing that "the register shall have jurisdiction of . . . the grant of letters to a personal representative"); *see also id.* § 711(12) (stating that the Orphans' Court shall have jurisdiction over, *inter alia*, the appointment of fiduciaries, "except that the register shall continue to grant letters testamentary and of administration to personal representatives as heretofore." (emphasis added) ); *In re Estate of Tigue*, 926 A.2d 453, 456 (Pa. Super. 2007) (stating that "it is the register who has the authority and duty to issue letters.").

*In re Est. of Huber*, 197 A.3d 288, 292 (Pa. Super. Ct. 2018) (emphasis omitted).

Plaintiffs argue that this holding means that, under Pennsylvania law, with minor exceptions not relevant here, only the Register of Wills[5] may grant a person authority to execute or otherwise act on behalf of a decedent's estate. (ECF 31 at pp. 1-10). Plaintiffs further argue that Pennsylvania courts have understood this assignment to be exclusively assigned to the Register of Wills. Defendants, for their part, acknowledge that, "[a]s a general rule under Title 20, 'original jurisdiction over petitions for letters of administration rests with the local [R]egister of [W]ills.'" (ECF 32 at p. 1) (quoting *Estate of Wisniewski v. Sawicki*, 283 A.3d at 813). However, despite this jurisdictional rule, Defendants argue that the issue in this case falls outside of the Register of Wills' original jurisdiction. (*Id.* at pp. 1-2). Defendants' argument is unpersuasive.

Though not expressly argued, Defendants' position appears to rely on the statutory construction canon of *expressio unius est exclusio alterius* – the inclusion of one thing implies the exclusion of others. As such, Defendants argue that that statute limits the Register of Wills' authority to appoint executors (issue "letters") in limited contexts. (ECF 32 at pp. 1-3) (citing 20

---

[5]    "Register" "[m]eans the register of wills having jurisdiction of granting of letters testamentary or of administration." 20 Pa. Cons. Stat. § 3155.

Pa. Cons. Stat. §§ 3155(b), which provides that "[l]etters of administration shall be granted by the register, in such form as the case shall require" and lists certain persons to whom such a grant may be made (*e.g.*, a "surviving spouse," or "the principal creditors of the decedent"). 20 Pa. Cons. Stat. § 3155(b)(1)-(8). The statute clarifies that the letter to those persons are granted "in the following order[.]" *Id.* As such, the grant to administer a decedent's estate is granted only to the next listed person or entity if there is not a qualifying member is found before the next number is called. *See id.*

This statute does not support Defendants' argument that this provision puts a limit on the types of "letters of administration" the Register of Wills may enter. To the contrary, it provides a hierarchy of administrators. If the first person noted does not qualify or cannot assume the position, the next in line get the appointment. The section does not abdicate the Register's right to appoint the executor or administrator.

Section 3158, which Defendants also cite, provides, in its entirety, that "[w]hen there is a will, but no executor qualifies, letters of administration *cum testamento annexo* may be granted to the person or persons entitled thereto." 20 Pa. Cons. Stat. § 3158. "Letters" is a defined term, which means "letters testamentary or letters of administration of any description." 20 Pa. Cons. Stat. § 102. *Cum testament annexo* means an appointed administrator in the absence of a known, competent one.[6] This provision is inapposite here, as there is clearly a qualified, named individual

---

[6]    The management and settlement of the estate of an intestate decedent, or of a testator who has no executor, by a person legally appointed and supervised by the court. Administration of an estate involves realizing the movable assets and paying out of them any debts and other claims against the estate. It also involves the division and distribution of what remains.

[ . . . ]

administration *cum testamento annexo*[:] an administration granted when (1) a testator's will does not name any executor or when the executor named is incompetent to act, is

– Mr. Dosik – to execute the will.  Section 3159, which Defendants also cite, is even less relevant; it simply calls for the Register of Wills to grant letters of administration "*de bonis non*" if there is "an entire vacancy" with regard to a "personal representative before administration is completed." 20 Pa. Cons. Stat. § 3159.  Nothing has been presented to this Court that shows an "entire vacancy" such that a *de bonis non* appointment of substitute administrator is warranted.  The Amended Decree does not remove the administrator of Decedent's estate; it merely attempts to grant a limited *ad litem* right to Defendants to pursue a FINRA arbitration over the Subject Accounts on behalf of the Estate, as part of an undisclosed settlement agreement referenced in the Amended Decree. Finally, Section 3160 provides that: "[w]henever the circumstances of the case require, letters of administration *durante minoritate*, *durante absentia*, or *pendente lite* may be granted to any fit person or persons, after such notice, if any, as the register shall require."  20 Pa. Cons. Stat. § 3160. This provision is also inapplicable as, again, there is a named administrator.  However, the provision further provides that under said circumstances, the letters may be issued *as the register shall require,* no mention of the Orphans Court is made.

These statutory provisions detail when and in what circumstances the Register of Wills may appoint and/or substitute administrators in the event of an absence or when needed. Furthermore, the statutory scheme sets out a clear structure: the Register of Wills issues letters of administration; the Orphans' Courts carry out proceedings related to the administration.  *See* 20 Pa. Cons. Stat. § 711(1) (granting to the Orphans' Court division jurisdiction over "[t]he administration and distribution of the real and personal property of decedents' estates . . . ").

---

deceased, or refuses to act, and (2) no successor executor has been named who is qualified to serve.

*See Administration,* Black's Law Dictionary (12th ed. 2024):

11

This Court has provided Defendants an opportunity to present evidence at a hearing, as well as in post-hearing briefing, to support their position that the Amended Decree effectively grants them the right to pursue FINRA arbitration related to the Subject Accounts.  Defendants have not provided sufficient evidence or legal argument to show that, under Pennsylvania law, the Amended Decree has the legal effect they claim.[7]

In sum, Section 3155 calls for a "letter of administration" from the Register of Wills to effectuate the administration of an estate; the Orphans' Court does not have the authority to issue those letters; no such letter from the Register appears to have been issued here; and there remains a known, competent administrator of Decedent's estate such that vacancy or *in absentia* provisions do not apply.  Accordingly, this Court finds that Plaintiffs have a more than likely chance to succeed on the merits of their claim to declaratory relief.

This Court has on several occasions held that the Needle Brothers cannot force T. Rowe Price into FINRA arbitration over the Subject Accounts.  At this stage of the litigation, the law and evidence still weighs against Defendants having the proper legal status to do so.  Despite the agreement between Decedent's Estate and the Needle Brothers, expressed by the Orphans' Court in the Amended Decree, which apparently grants the Needle Brothers authority to pursue an arbitration before the FINRA, Defendants have presented no letter of appointment from the Register of Wills which would provide Defendants the authority to present such claim on behalf of Decedent's Estate at the FINRA.  Therefore, the analysis that this Court has used to enjoin such arbitration and dismiss the Needle Brothers' claims in the 2021 action, as well as this one is not

---

[7]    Though the burden, at this stage of litigation is not on, Defendants, Plaintiffs' burden has been met, and Defendants have not effectively rebutted Plaintiffs' argument that the structure of the Pennsylvania Decedents, Estates and Fiduciaries Code demonstrates Plaintiffs' likelihood of success on the merits.

yet disturbed.  *See generally*, *T. Rowe Price Grp., Inc. v. Needle*, No. 26-0015, 2026 WL 75822 (E.D. Pa. Jan. 9, 2026).

As Plaintiffs have shown a more than likelihood of success on the merits, this factor favors imposition of a preliminary injunction precluding execution of any FINRA arbitration over the Subject Accounts at this time.[8]

### *Irreparable Harm*

The Third Circuit has held that irreparable harm is that which "cannot be redressed by a legal or an equitable remedy following a trial." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994).  Economic loss does not constitute irreparable harm.  *Id.*  Moreover, injunctive relief is limited to circumstances in which the injury alleged is not only irreparable, but actual and imminent.  *Holiday Inns of Am., Inc. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969) (noting that injunctive relief may not be used to simply "eliminate a possibility of remote future injury, or a future invasion of rights . . . .").  Here, Plaintiffs have met their burden to show that the harm it would incur if forced to arbitrate before FINRA would be irreparable.  (*See* ECF 5 at pp. 14-15).  As this Court previously held, "'forcing a party to arbitrate a claim it did not agree to arbitrate constitutes *per se* irreparable harm.'"  *Needle*, 2022 WL 900398, at *4 (quoting *AT & T Mobility LLC v. Smith*, 2011 WL 5924460, at *9 (E.D. Pa. Oct. 7, 2011)); *see also PaineWebber Inc. v.*

---

[8]    Defendants also argue that this matter is not properly before this Court, suggesting any challenge to their authority to file for a FINRA arbitration on behalf of Decedent's estate should be brought in the Orphans' Court. (ECF 15 at p. 19).  Defendants are mistaken.  The statutory provisions and cases Defendants cite in support of this argument are inapposite. (*See id.*).  For example, Title 20 Pa. Cons. Stat. § 711 grants jurisdiction to the Court of Common Pleas Orphans' Division, but nothing more.  It is lost on this Court how this provision or any case cited strips this Court of diversity jurisdiction over this matter.  Plaintiff T. Rowe price is a corporation incorporated in Maryland and Defendants are citizens of Pennsylvania *See* 28 U.S.C. § 1332.  The Court also has subject matter jurisdiction as this claim is brought under the Securities Exchange Commission Act, 15 U.S.C. § 78(a).  *See* 28 U.S.C. § 1331.  This is particularly perplexing as Defendants are attempting to invoke a federal statute to arbitrate their claims in a federal forum.  This Court has jurisdiction to determine whether Defendants have the proper standing to do so.

*Hartmann*, 921 F.2d 507, 514–15 (3d Cir. 1990), *overruled on other grounds by Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002) (holding that "the district court did not abuse its discretion or commit an error of law in determining that [the plaintiff] would suffer irreparable harm if it were forced to submit to the arbitrator's jurisdiction . . . ."). Accordingly, this factor weighs in favor of granting the injunctive relief Plaintiffs seek – *i.e.*, to enjoin the Needle Brothers from forcing Plaintiffs to participate in a FINRA arbitration.

### *Balance of the Hardships*

It is not lost on this Court that Defendants have been attempting to litigate their claims over the Subject Accounts for several years. *See, e.g.*, *Needle*, Civil Action No. 21-cv-4786, 2022 WL 3357450 (E.D. Pa. Aug. 15, 2022). But perservence in the face of legal obstacle cannot itself constitute a sufficient hardship. Neither party, however, makes a direct argument on this factor. (*See generally* ECF 5, ECF 15). Nonetheless, this Court will briefly address this factor.

An injunction halting the FINRA arbitration will not harm Defendants nearly as much as it would harm Plaintiffs who, absent the requested injunctive relief, would be required to participate in a FINRA arbitration, which is a right that only the owners (or legal representative) of an account have. An injunction preventing Defendants from proceeding with an arbitration enforces the rights of the legitimate parties – Plaintiffs and the account owner. Defendants have been pursuing these claims now for nearly five years. Plaintiffs have brought this action to ask this Court to again address the arbitrability of Defendants' claims. Absent a showing from Defendants that this Court's prior rulings were in error, or that facts have changed, this Court finds no reason to alter its analysis that the balance of hardships favors granting the injunctive relief sought by Plaintiffs. As detailed *supra*, nothing yet presented to this Court alters the outcome of

this Court's analysis.  This Court finds that Plaintiffs would be prejudiced if forced to continue defending against Defendants' alleged claims in a FINRA arbitration.

Thus, the potential harm Plaintiffs could suffer if this Court did not issue an injunction outweighs any potential delay that Defendants might experience.  The balance of the parties' hardships weighs in favor of granting the requested relief.  *See Needle*, 2022 WL 900398, at *4 (finding the same).

### *Public Interest*

Where the movant "'demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor'" the movant.  *Needle*, 2022 WL 900398, at *5 (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)).  Further, "[w]hen the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be at most a neutral factor in the analysis[.]" *Macquarie Holdings USA Inc. v. Rode*, 2012 WL 12882417, at *4 (C.D. Cal. Jan. 17, 2012) (citing *Stormans, Inc. v. Selecky*, 586 F.3d 1108, 1138–39 (9th Cir. 2009)).  Here, Plaintiffs have demonstrated a likelihood of success on the merits and that it would be irreparably harmed if forced to participate in a FINRA arbitration.

An injunction issued here would be narrow and limited only to Plaintiffs and Defendants.  As such, this Court finds that the public interest factor favors granting the motion for preliminary injunctive relief.

**CONCLUSION**

Based on the reasons set forth, Plaintiffs' motion for a preliminary injunction is granted pursuant to Rule 65(a).  Defendants may not take any action within the time prescribed by this Court's Order to enforce or prosecute its FINRA arbitration.

15

NITZA I. QUIÑONES ALEJANDRO, J.